IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SEVERA N. DAVIS                                                  PLAINTIFF

vs.                                  Civil No. 04-4135

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                      DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

Severa N. Davis (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The parties have each filed appeal briefs (Doc. #5 & 6). The history of the administrative proceedings is contained in the respective briefs and will not be recited herein, except as is necessary. It should be noted that on February 20, 2001, a final decision was reached denying Plaintiff's prior application for DIB benefits (T. 21, 431). Plaintiff failed to appeal the February 20, 2001, decision beyond the administrative level.

The DIB application now before the undersigned was protectively filed on April 3, 2002, alleging an onset date of disability of June 1, 1998 (T. 66-67, 63-65). Plaintiff alleges that she is disabled due to: degenerative disc disease; frozen shoulder; insulin dependent diabetes

mellitus; history of knee surgery; sciatica; and, muscle spasms. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The administrative hearing was conducted on March 19, 2004 (T. 427-448), after which the ALJ rendered an adverse decision on July 26, 2004 (T. 21-26).

Plaintiff then requested review of the ALJ's decision by the Appeals Council (T. 8). Plaintiff submitted copies of physical therapy treatment notes as additional evidence or exhibits to the Appeals Council (T. 388-426, 8). On September 20, 2004, the Appeals Council denied Plaintiff's request for review (T. 5-8), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals (Doc. #1, 5). The Commissioner supports her decision, urging the undersigned to affirm this matter (Doc. #6). This matter is before the undersigned by consent of the parties (Doc. #2).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

In assessing the substantiality of evidence, the Court must consider evidence that

detracts from the Commissioner's decision, as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).* It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992*).

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

AO72A
(Rev. 8/82)

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

When, as here, the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. We then have no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992)*. At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." *Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994)*. However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had they been available at the initial hearing. *Flynn v. Chater, 107 F.3d 617, 622 (8th Cir.1997)*. Thus, we have endeavored to perform this function with respect to the newly submitted evidence. *Id.; Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995)*.

**Discussion:**

Plaintiff has the burden of proving her disability. E.g., *Sykes v. Bowen, 854 F.2d 284, 285 (8th Cir. 1988)*. Thus, she bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991)*. Despite the Plaintiff's burden, there is little support in the record for Plaintiff's claim of disability. It is well settled that proof of a

disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992)*.

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence (Doc. #5). Plaintiff argues that the ALJ erred in finding that she has the residual functional capacity to perform the full range of light work and has the residual functional capacity to perform her past relevant work. Despite a thorough review of the administrative record, the undersigned found no support for Plaintiff's arguments within the record.

Plaintiff also argues that the ALJ erred in determining that Plaintiff could perform a full range of light duty work without first obtaining the testimony of a vocational expert based upon hypothetical questions. A vocational expert can be necessary when a claimant is found to no longer possess the residual functional capacity to perform her past relevant work. A vocational expert is not utilized to make a determination of what residual functional capacity range a claimant maintains the ability to perform. If vocational expert testimony were required to determine residual functional capacity, then every social security appeal which reached step four of the sequential evaluation would require testimony from a vocational expert. The law does not require such involvement of a vocational expert. Testimony of a vocational expert is only required when the burden shifts to the Commissioner and claimant has a nonexertional impairment. *Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994)*. Even if an ALJ fails to call a VE, it is not reversible error if there is substantial evidence on the whole record that Plaintiff's nonexertional impairment does not significantly limit her exertional capabilities. Dawson v. Bowen, 815 F.2d 1222, 1227 (8th Cir. 1987).

In the event that an ALJ determines that a claimant's residual functional capacity should

-5-

be reduced by a nonexertional impairment, then the ALJ must obtain testimony from a vocational expert to determine what, if any jobs exist which may be performed with the reduced residual functional capacity. VE testimony based upon hypothetical questions must be obtained in a case which proceeds to step five of the sequential analysis and involves nonexertional impairments which reduce or diminish the claimant's ability to perform the full range of work activity. However, this is not such a case. An ALJ is not required to obtain testimony from a vocational expert when determining a claimant's residual functional capacity. Here, at step four of the sequential analysis, the ALJ determined Plaintiff retained the residual functional capacity to perform her past relevant work as a sales clerk and inspector at a sewing machine factory. Therefore, the ALJ was not required to obtain ALJ testimony. Yet, it should also be noted that the ALJ did, in fact, question a vocational expert during the course of Plaintiff's administrative hearing (T. 446-448). During the course of the testimony, the vocational expert provided exertional requirements for Plaintiff's past relevant work, describing the exertional demand and skill level required of a sales clerk and an inspector at a sewing machine factory. Therefore, this argument is without merit.

Plaintiff argues that she was at a disadvantage during her hearing due to her decision to proceed without legal or other representation. At the outset of the hearing, the following exchange took place:

> ALJ: This is a hearing in the claim of Severa N. Davis, (claim number omitted). This is a claim for Disability Insurance Benefits and the hearing is being held in Texarkana, Arkansas, on March 19, 2004, commencing at 9:35 a.m. The presiding reporter is Rachel Jordan and we have in attendance Vocational Expert Richard Marin, and the claimant appears here without legal representation. Miss Davis, you're aware that you're entitled to have someone represent you, I'm sure.

CLMT: Yes.

ALJ: By the same token, you may waive that right and proceed with the hearing without legal representation. Is that what you want to do?

CLMT: Yes.

(T. 429).

Clearly, the Plaintiff, a 49-year-old, high school graduate, knowingly and voluntarily waived her right to counsel. Despite her argument that she was disadvantaged by her lack of counsel, the record reflects that the ALJ took care to provide Plaintiff with a fair and impartial hearing. Her argument that the ALJ took advantage of her pro se status by failing to pose hypothetical questions to the VE is simply without merit. There is no requirement that hypothetical questions be posed to a VE in a step four case. This case ended at step four of the sequential analysis. Further, the ALJ sent the Plaintiff for a consultative evaluation following the administrative hearing. Despite the fact that the consultative examiner, Dr. Gary P. Nunn, a specialist in the field of internal medicine, essentially determined that Plaintiff had the capacity to perform work at all exertional levels, the ALJ gave little weight to Dr. Nunn's opinion based upon the medical evidence of record (T. 382-386, 24).

The United States Court of Appeals for the Eighth Circuit has stated numerous times that it is the ALJ who has the duty to fully and fairly develop the record, even if a plaintiff is represented by counsel. *Wilcutts v. Apfel, 143 F.3d 1134, 1137-38 (8th Cir.1998).* The Commissioner acknowledges that it is her " 'duty to develop the record fully and fairly, even if ... the claimant is represented by counsel.' " *Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir.1992) (quoting Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983)).* This is so because an

-7-

administrative hearing is not an adversarial proceeding. *Henrie v. Dept. of Health & Human Serv., 13 F.3d 359, 361 (10th Cir. 1993)*. "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Battles v. Shalala, 36 F.3d 43, 44 (8th Cir.1994)*. Here, the ALJ fulfilled his duty on behalf of the Commissioner.

To prove disability, plaintiff had to establish a physical or mental impairment by medical evidence consisting of signs, symptoms and laboratory findings, rather than by only her own statements of her symptoms. See *20 C.F.R. § 404.1508*.

For purposes of Plaintiff's application for DIB benefits, the relevant time period begins with the date of the last final decision, February 20, 2002 (T. 431, 21), and ends with the date of the ALJ's decision, July 26, 2004 (21-26). In order to establish that she suffers from a disability which makes her eligible for benefits, Plaintiff must prove that she was disabled within the time frame of the above stated relevant time period for this application.

Here, the record does not establish evidence of disability, as defined by the Act, during the relevant time period. Nor does the record establish that Plaintiff suffered from a disability prior to or after the relevant time periods. Although evidence of a disability subsequent [or prior] to the relevant time period can be relevant in helping to elucidate a medical condition during the time for which benefits might be awarded, such is not the case in the instant action. *Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998), citing Fowler v. Bowen, 866 F.2d 249, 252 (8th Cir. 1989); Martonik v. Heckler, 773 F.2d 236, 240-41 (8th Cir. 1985); and, Social Security Act, §§ 216(i), 223(c), as amended, 42 U.S.C.A. §§ 416(i), 423(c)*. This is not a case wherein there exists a retrospective diagnosis or elucidation of a previous medical condition

-8-

within the medical documentation from the relevant time period. Retrospective or previous medical diagnoses are relevant evidence of disability existing before the close of the relevant time period; however, when the specific dates encompassing the relevant time period are critical, retrospective or previous medical opinions alone will not usually suffice unless such evidence is corroborated, as by subjective evidence from lay observers such as family members. *Social Security Act, §§ 216(i)(3), 223(c)(1), as amended, 42 U.S.C.A. §§ 416(i)(3), 423(c)(1); Jones v. Chater, 65 F.3d 102 (8th Cir. 1995).* Plaintiff did not produce any such medical evidence or lay testimony from witnesses at hearing (T. 427-448).

The administrative record reflects that since the alleged onset date, by her own admission, Plaintiff continues to engage in a wide range of activities of daily living. Plaintiff testified that she serves as the Youth Director for her church, and maintains her CDL[1] drivers license endorsement which enables her to drive her church's 15 passenger van (T. 441, 446). Plaintiff also attends worship services, teaches Sunday school and is "active in the choir" (T. 441). Plaintiff testified that she performs daily housecleaning, cooking, and yard work (T. 437, 441). On May 21, 2002, Plaintiff completed a Supplemental Interview Outline form (T. 75-79). Therein, Plaintiff asserted that she can perform the following activities of daily living: bathe; dress; hair care; laundry; dishes; change sheets; iron; vacuum/sweep; take out the trash; shop for groceries; ship for clothes; banking; post office; cooking or preparing sandwiches, meats, vegetables, desserts, and dishes that require a recipe; driving; driving unfamiliar routes; walk for exercise; attend church; watch television; listen to the radio; read; visit friends and relatives; and, tend to her flowers (T. 75-79). Plaintiff completed the same form on October 2, 2002,

---

[1]Commercial Drivers Licence.

wherein she stated that she can perform the following activities: hair care; dress; bathe; laundry dishes; change sheets; iron; vacuum/sweep; shop for groceries; shop for clothing; banking; post office; cooking; preparing 5 meals per week, which consist of sandwiches, meats, vegetables, desserts, and dishes that require a recipe; pay bills; use check book; count change; attend church; watch television; listen to radio; read; and, visit with friends and relatives (T. 80-84). In yet another Disability Supplemental Interview Outline (T. 103-108), Plaintiff stated that she spends every morning preparing her husbands breakfast and lunch (T. 103). She also stated that she sometimes prepares dinner, cooking approximately 5 times per week (T. 104). Plaintiff makes her bed, does the laundry, washes the dishes, goes grocery shopping, reads a good deal, watches television, listens to music, bakes cookies once per week, and works with her flowers (T. 103-107). Plaintiff also attends church three times per week (T. 107). She is active with the youth and is their youth director (T. 107). She also attend a weekly bible study and teaches Sunday School (T. 107).

    The alleged onset date of June 1, 1998, coincides with Plaintiff's work related injury to her back. However, in addition to obtaining worker's compensation benefits immediately following her work related back injury, she also drew unemployment benefits for six months (T. 433). Typically, in order to draw unemployment benefit the recipient must assert that she is capable of working and must actively seek employment. The Eighth Circuit Court of Appeals has consistently held that the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability. *Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998), citing Salts v. Sullivan, 958 F.2d 840, 846 n.8 (8th Cir. 1992).* Therefore, drawing unemployment is inconsistent with Plaintiff's claim for DIB benefits, and

AO72A
(Rev. 8/82)

the ALJ properly determined that same detracts from her credibility.

The ALJ found that Plaintiff suffered from the severe impairments of degenerative disk disease and diabetes mellitus (T. 23). Plaintiff's primary complaint is that of her back pain and the effects thereof. However, she has undergone numerous diagnostic tests which have failed to reveal any significant findings. On March 5, 1999, an MRI of Plaintiff's lumbar spine reflected a normal lumbar spine (T. 121). On August 12, 1999, a lumbar diagnostic myelogram was negative (T. 122). A second lumbar MRI conducted on November 22, 2000, revealed "minimal central bulgin at the L5-S1 level" (T. 137). A third MRI of Plaintiff's lumbar spine was read to reveal "small posterior central to minimally left paracentral disc at L5-S1" (T. 132). No diagnostic test revealed any disabling impairment of Plaintiff's lumbar spine. As the Eighth Circuit Court of Appeals noted, degenerative disc disease with mild posterior bulging is not a disabling condition. *Woolf v. Shalala, 3 F.3d at 1213*.

Likewise, the ALJ duly notes that Plaintiff's diabetes mellitus is capable of being controlled with diet and medication (T. 23). However, Plaintiff's noncompliance with the diabetes mellitus treatment regimen is well documented in the record. Plaintiff gained weight rather than losing weight as recommended by Dr. Timothy Overlock (T. 431, 150). Numerous laboratory reports indicate that Plaintiff's glucose levels were too high (T. 335, 334, 332, 267, 256, 254, 250, 248, 236, 229, 228, 224, 223, 222, 216, 217, 215, 207, 190, 187, 184, 165, 158). In fact, the record reflects that Plaintiff's blood glucose level of within the normal range on one occasion (T. 181). No other normal blood glucose tests appear in the record. This considered in conjunction with the Plaintiff's failure to follow the doctor's treatment plan for her diabetes indicates that her noncompliance is the cause of her very high glucose levels, despite the use of

AO72A
(Rev. 8/82)

insulin (T. 437, 119, 218). If an impairment can be controlled by treatment or medication, said impairment cannot be considered disabling. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993; Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).*

Plaintiff also alleged that the ALJ erred in evaluating her credibility and nonexertional impairments (Doc. #5). In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted)*,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).* The ALJ may discredit subjective

-12-

AO72A
(Rev. 8/82)

complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993)*.

The ALJ devoted a significant portion of his opinion to conducting the proper *Polaski* analysis (T. 21-26). The ALJ not only discussed the medical evidence, he also discussed the *Polaski* factors, such as Plaintiff's: alleged activities of daily living; alleged functional limitations and restrictions; and, work history.

The ALJ properly evaluated Plaintiff's subjective complaints within his decision. He clearly considered and reviewed the *Polaski* factors as they apply to Plaintiff's case. Clearly, Plaintiff engages in a wide range of activities of daily living which are inconsistent with a moderate to severe level of pain. Likewise, none of Plaintiff's medications are indicative of severe pain, or other severe, uncontrollable nonexertional impairment. Plaintiff's work history was properly considered, as well. It would not be reasonable to require a more elaborate articulation of the ALJ's thought processes. *Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); Gooch v. Secretary of H.H.S., 833 F.2d 589, 592 (6th Cir. 1987), cert denied, 484 U.S. 1075 (1988)*.

Plaintiff's allegations that the decision of the ALJ was not supported by substantial evidence are not supported by the administrative record. The additional evidence which was considered to the Appeals Council consists of physical therapy treatment records from which would not have changed the ALJ's decision. These records indicate that Platintiff reported on June 9, 2004, that she had "no problems prior to 2 mo[nth]s ago" (T. 423). If Plaintiff's administrative hearing was conducted nearly three months before she made this report to the therapist (T. 427-448). Likewise, the remainder of the physical therapy notes indicate that

-13-

Plaintiff was improving and performing prescribed exercises which would have been inconsistent with her alleged level of pain and impairment (T. 388-426). In fact, the additional evidence bolsters the ALJ's decision. Therefore, the decision of the ALJ must be affirmed.

**Conclusion:**

There is substantial record evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed and the Plaintiff's complaint dismissed with prejudice. Plaintiff's motion to introduce new evidence should be denied. A judgement incorporating these findings will be entered pursuant to F.R.C.P. 52 and 58.

ENTERED this 4th day of November, 2005.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)